By the Court. Hoffman, J.
The action is upon a policy of insurance executed by the defendants in favor of the plaintiff, dated the 1st day of December, 1853, whereby they insured the plaintiff against loss by fire, to the amount of $4,125, viz.: $2,250 *588 in marble machinery, and $1,875 in stock manufactured, unmanufactured, and in process of manufacture; all contained in the brick cotton mill occupied by the assured, situate about thirty feet east of the Ogden mill, in the town of Cohoes, Albany county, Few York, as per plan and survey Fo. 102, on file in this office, which is hereby made part of this policy, and to be referred to in case of loss.
A fire occurred on the premises on the 11th of October, and another on the 20th of October, 1854.
All the material facts and points arising in this case may be arranged under three heads.
1st. As to the delivery and sufficiency of the preliminary proofs, in relation to the first fire, which occurred on the 11th of October, 1854.
2d. Whether a certain paper, containing answers to questions, and signed by the plaintiff, is in evidence in the cause ?
3d. If it is, what is the import and effect of an answer to one of the questions contained in it, which is relied upon as a warranty or representation, and stated to have been violated so as to discharge the insurers?
1st. On the 12th of October, 1854, the plaintiff made out and signed a statement, headed loss at Mohawk mill, October 11,1854, in which he sets out in detail the items of the loss by the fire of that day, amounting to $1.030. On the 30th of October, 1854, he makes and signs another statement of the loss by the fire of the 20th of October to the mill buildings, machinery and cotton. At the foot of this statement is added—
Damage on the 11th inst. to machinery, .... $934 00 Do. do. do. to stock,..... 96 00
$1030 00
From which is to be deducted the sum of . . . 382 10 for certain allowances.
These statements being joined together, the plaintiff made an affidavit that the annexed account was a just and true account of the loss by fire of property insured by policy Fo. 132, in the Metropolis Insurance Company of the City of Few York. But, in this affidavit, he says that the fire which occasioned the loss originated on the 20th of October, 1854, at about half-past one at *589 night, in consequence of a nail getting into a picker while in motion. This affidavit was sworn to on the 3d of November, 1854. Then follows, among the proofs, another paper headed, “ Statement of loss sustained by fire in the Mohawk mill, October 20th, 1854, particulars of which were heretofore specially rendered. In this we find the following:—
“ Damage, per statement rendered, of the fire of October 11, $1,030.00.”
This sum was added to the loss claimed for the fire of the 20th, making, together, $10,709.82, and from this was deducted the $382.10, leaving the whole claim $10,327.72. This was signed S. Bilbrough, and is endorsed: “Received Nov. 3, 1854.”
The certificate given by Mr. Hubbard, a Justice of the Peace, Cohoes, in pursuance of the requisitions of the policy, states only that he has made diligent inquiries as to the cause of the fire of 20th of October.
It may be added, that the witness Dutemple, one of the appraisers of the loss, identifies the statement as signed by him, and particularly swears as to the loss by the fire of the 11th being a true certificate.
Under these circumstances, we think that there is enough to bring the case within the principle of the authority cited. The insurers were bound, upon the presentation of these proofs, to have distinctly objected to their sufficiency. They were apprised of a claim for a loss by the fire of the 11th of October. The state ment was definite; it was sworn to; it was certified by the appraisers ; the great defect was, that it was not in fact certified as to such fire by a magistrate. We do not consider this a fatal objection, when taken at the trial for the first time. (Ætna Ins. Co. v. Tyler, 10 Wendell, 401; and O'Niel v. Buff, 3 Comst. 128).
2d. The next point in the cause relates to the paper which contains the answers of the plaintiff to certain questions. It is insisted by the defendant that this paper was part of the application, and was adopted as part of the policy.
This paper is marked, on the back, No. 102, and the signature is proven to be the handwriting of the plaintiff. Two other papers were produced with this paper, and the three offered in evidence; the two others were read without objection, indeed admitted by the plaintiff’s counsel. He objected to this paper as inadmissible. *590 His objection was overruled and an exception taken. The first paper was merely a plot or diagram of the premises. The third paper is an application to the defendants for insurance, and is hereafter particularly noticed. The second paper is the one objected to; it is headed “Representation of a cotton or woollen mill, on which insurance is to be predicated. Clear and definite answers are expected to each of the following interrogatories.” Then follows a series of questions, in number 46. To these questions answers are given in the document procured, and, as before stated, it is signed by the plaintiff. At the bottom is the following application :—
“ The subscriber requests insurance against fire by the American Insurance Company of Providence, R. L, on the hereindescribed factory. On building and fixed machinery, $3,000; on moveable machinery, $2,500; on stock, raw, manufactured, and in process.
New York, Nov. 23, 1852. S. Bilbrough.”
The third paper is an application to the defendants, and is as • follows:—
“ S. Bilbrough: On moveable machinery, . . . $2,250 00
On stock, manufactured, unmanufactured, and' in process of manufacture,.......... 1,875 00 all contained in the brick cotton, mills occupied by the assured, situate about thirty feet east of the Ogden mills, as per plan and survey No. 102, on file in the office of the --, which is hereby made a part of this policy, and to be referred to in case, of loss. Cohoes, Albany county, New York. Similar insurance in one year from 1st December, 1853. Left by S. Brown, Insurance Broker, November 30, 1853.”
A similar insurance is thus asked to that which had been proposed or effected, according to paper No. 102, at the Providence company, or some other company. Wherever that paper was, it was to be part of the contract.
Is there not sufficient evidence to show, that instead of being in another office it was, in fact, handed, with the application, to the defendants ?
Taking the evidence of De Forest and Ellery together, we are of opinion that this fact is satisfactorily proven. At any rate the *591 jury having, in effect, passed upon it, we see no ground for interfering with the conclusion.
This paper, then, being before the company, and acted upon in making the policy, contained a representation or an engagement, upon which the risk was undertaken. The clause in question admits of two constructions as to the period at which it went into effect, whatever that effect may be.
The paper was dated the 23d of November, 1852, and the question and answer are in the following terms:—“ During what hours is the factory worked?” The answer is: “We run the cards, picker, drawing-frames, and speeder, day and night, the rest only twelve hours daily. We only intend running nights until we get more cards, &c.r which are making; shall not run nights over four months.”
On the 30th of November, 1853, this paper, as before observed, was left by the agent with the company, and adopted as part of the policy. Assuming that it is a renewal of the statements, as if the date had been altered, we are then to examine as to its true construction.
It is the statement of a fact as to their then running certain parts of the machinery, the cards, &c., day and night; the declaration of an intention to cease running at nights, when they get more cards which were then making. Then follows the engagement:—“ We shall not run at nights over four months.”
I think that the statement of an intention to cease running, when they received the cards then being made, was equivalent to an agreement to cease upon that event: Had it been proven what cards were then in hand for the plaintiff, and that they were delivered before the fire, a running at nights afterwards would have avoided the policy.
If this is so, then the subsequent clause is plainly but a precise definition and limitation of this agreement. It is tantamount to saying (when the whole is read together,) this: We will cease running at nights when the new cards which are now making are ready, and the period shall not at the utmost exceed four months.
This seems to us to be the true explanation of the clause in question. The evidence is, that the mill had not been run at nights, from May, 1854, until between the 11th and 20th of October, 1854, when, in consequence of damage by the first fire, *592 they had run the cards and machinery connected therewith, at night, to make up for lost time. If the case of Murdock v. The Chenango Mutual Ins. Co., (2 Comstock, 210.) can be considered as decided entirely upon one ground recognized by Justices Strong and Jewett, it would be perfectly decisive.
There was the following clause in an application for a fire policy upon a grist-mill: “ The building is twenty-eight by thirty-six feet, with three run of stones, two bolts, one smut-mill, and one stove-pipe passes through the window at the side of the building. There will, however, be a stove-chimney built, and the pipe will pass into it at the side.” The application was thus referred to in the policy:—“Reference being had to the application of said Murdock & Garrett for a more particular description, and as forming a part of this policy.”
Justice Strong comments upon the contradiction involved in the term, “a promissory representation,” and holds that there was in the case a positive engagement, which formed part of the policy. The assurers assumed the existing risk, until a reasonable time should have elapsed to make proposed changes, and after that, the proposed diminished risk only. The promised change was, therefore, vital to the continuance of the responsibility. I think that the policy became inoperative by reason of the nonperformance of the promise made by the assured, after a reasonable time to make the proposed change had elapsed.”
Jewett, Ch. J., said:—“That the clause in the application relating to the stove-pipe, amounted to a warranty, but whether such warranty was broken or not, depended on the question whether a reasonable time had elapsed to perform the undertaking.”
It is true, that Justice Cady, who also delivered an opinion, places his decision upon other grounds, viz.: that an action of two persons assured jointly in the policy, could not be sustained, when one of them had transferred his interest to the other before the loss; and next, that the erection of a barn on the premises was a violation of a condition in the policy, as an act done which incurred the risk. Both Justices Jewett and Strong supported these views, and a new trial was granted. The grounds on which the other Judges proceeded are not disclosed.
But at any rate, we have a precise and important point stated by two Judges, and uncontradicted and unqualified by any mem *593 ber of the court; and this, when the counsel on both sides had brought the question" directly before the court. Mr. Reynolds, for the respondent, made the point, that the clause in question was not a, warranty, but a mere expression of an intention, amounting, at most, to a privilege reserved, citing Alston v. The Mech. Mutual Ins. Co., 4 Hill, 29.
I consider that this case has gone far to dissipate the error into which the reasoning of Chancellor Walworth, in Alston’s case, (4 Hill, 329,) and of Mr. Justice Wilde, in Bryant v. The Ocean Ins. Co., (22 Pickering, 200,) undoubtedly leads, and which has been so elaborately examined and refuted by Mr. Justice Duer in his Treatise on Insurance, (vol. ii., p. 749.)* It seems to me manifest, that the clause in the application would have been held by those eminent Judges, as nothing but a declaration of an intent at that time to have a stone chimney built, and the pipe to pass it at the side; and, unless the insurers could accomplish the difficult task of proving that the assured had no such intention, the policy would remain in force. But the learned Judges in the Court of Appeals, extracted a positive stipulation from these words. It was a promise, that certain things which they could do, should be done, not a statement or representation that they then had the intent to do it, which they might alter. (See further, Mr. Phillip’s Observations on Insurance, ed. 1854, 551, 553.) After all, and without involving in obscurity by criticism what appears clear, the sound principle seems to be, that language in a policy which imports that it is intended to do, or omit, an act which materially affects the risk, its extent or nature, is to be treated as involving an engagement to do or omit such act. If the assured would reserve a right to change his intention, he must employ explicit, unquestionable language to denote the reservation.
It is plain, we think, that the terms used in the present case are much .stronger to establish an express promise than those em ployed in the case of Murdock v. The Chenango Co.
The view now taken, does not affect the loss arising from the *594 first fire, and the result is, that the plaintiff can only recover the sum of $647.90, with interest, being the loss by the first fire, after deducting the $382.10, which, we understand, is applicable to that loss.
Judgment accordingly.

 Mr. Amould, the author of the most recent work on Marine Insurance, adopts the views and even the language of Mr. Duer, (1 Arnould, p. 602, § 191). The conclusion at which he arrives is, “ That the positive representation of future facts, material.to the risks, mil, if false, avoid the policy,” id. p. 609.