SCHULTZ *v.* MUTUAL LIFE INS. CO. OF NEW YORK.*

*(Circuit Court, S. D. New York.   March, 1881.)*

1. LIFE INSURANCE—APPLICATION—STATEMENTS AND DECLARATIONS.

A life insurance policy provided that it was issued and accepted upon the express condition and agreement that "if any of the statements and declarations made in the application, * * * shall be found in any respect untrue," it should be void.

*Held,* that all statements and declarations in the application, whether material or not, must be true.

2. SAME—SAME—SAME.

*Held, further,* that such declarations include promises or agreements with regard to the future existence of facts, as well as those existing at the time.

3. SAME—PROMISSORY WARRANTY.

In the application the insured declared that he "will not practice any pernicious habit that obviously tends to shorten life."

*Held,* that this was a promissory warranty, whose breach would work a forfeiture, and evidence to prove such breach was admissible.

4. SAME—PERNICIOUS HABIT.

The excessive use of alcoholic liquors is a pernicious habit that obviously tends to shorten life.

The policy was upon the life of Johannes Schultz, for the benefit of his wife.   The application, which was made a warranty and the basis of the insurance, contained the following provision: "And the said person whose life is proposed for insurance further declares that he is not now afflicted with any disease or disorder, and that he does not now, nor will he, practice any pernicious habit that obviously tends to shorten life."   It was claimed by the defendant that the policy had become void through the violation of this provision. In support of this claim evidence of a former employer was introduced that insured became unable to satisfactorily perform his duties as book-keeper, and was consequently discharged, on account of his acquiring habits of excessive drinking.   Testimony taken under a commission in Germany was also introduced, to show that after his return to that country, where he resided during the last five years of his life, the insured was grossly intemperate.   According to the

*Insurance Law Journal.

testimony of a policeman thus taken: "His ordinary drink was *schnapps* or brandy. I never saw him drink anything else. In the last year of his life I saw him on different occasions drink on the street out of a bottle. I have often seen him drunk on the street. He staggered about and sometimes fell to the ground. In the morning it was his custom to go to Sommer's tavern, and afterwards he was accustomed to visit other taverns. He spent almost the whole day in visiting one tavern after another. * * During the last months of his life he was accustomed to carry a *schnapps* bottle about with him, from which he drank on his way from one tavern to another. * * I have more often seen him drunk than sober." One tavern keeper thus testified that he came to his tavern about three or four times a week, remaining from two to two and a half hours, and drinking three or four glasses of *schnapps*, and he had seen him drunk three or four times. Another tavern keeper testified to his drinking *schnapps* at times in his place. The proofs of death showed that insured had been afflicted for two years with chronic enlargement of the liver, and that death was caused by an apoplectic stroke of the brain, caused by congestion of the blood in the head and abdomen. Medical testimony was introduced to show that these disorders were the results of excessive drinking.

On the part of the plaintiff the evidence of two former acquaintances was submitted to the effect that the habits of insured in America, within their observation, were not different from those ordinarily prevailing among Germans, and his drinking was not excessive nor specially noticeable in its results. The evidence with regard to his habits in Germany was not contradicted. The court charged, among other things, that it was not necessary for defendant to show that the insured had acquired a habit which did obviously shorten his life or impair his health, but it must show that he "had acquired and did practice the habit of drinking alcoholic liquors to that degree of excess which is well known to be pernicious to health, and which tends to shorten life;" also, "I do not know that I can say, as I am requested to do, as matter

of law, that the excessive use of alcoholic liquors is a pernicious habit that obviously tends to shorten life. I regard that proposition as a matter of fact, and as a fact of such universal knowledge as to have become axiomatic." The jury brought in a verdict for the plaintiff. On a motion for new trial by defendant, *Shipman*, J., said: "The motion for a new trial is granted upon the ground that the verdict was, in my opinion, plainly contrary to the evidence in the cause." The admission during the trial of the evidence taken under the commission was objected to by counsel for plaintiff, citing *Knecht* v. *Mutual Life Ins. Co.* 8 Ins. Law Journal, 639, and the following opinion was delivered by the court on this question.

   *John L. Hill* and *John J. Thomasson*, for plaintiff.

   *Julien T. Davies* and *Roger Foster*, for defendant.

   SHIPMAN, D. J. The question pending at the adjournment yesterday was as to the admissibility of evidence to show that after the date of the policy the person whose life was insured, though previously temperate, formed the habit of intemperance. The clause in the policy referring to this subject is as follows: "This policy is issued and accepted by the assured upon the following express conditions and agreements: * * * If any of the statements and declarations made in the application for this policy, upon the faith of which this policy is issued, shall be found in any respect untrue, then, and in every such case, this policy shall be null and void." The general character and legal effect of a similar clause in a life policy was considered by the supreme court in *Jeffreys* v. *Life Ins. Co.* 22 Wall. 47. The clause in that policy declared that the policy was made by the company upon the express condition and agreement that the statements and declarations made in the application for the policy, and on the faith of which it was issued, were in all respects true. The question before the court was whether the untruth of any statement or declaration made the policy void, or whether the untruth of such statements only as were material to the risk had such effect. The court says: "This stipulation is not expressed to be made as to important or material statements

only, or to those supposed to be material, but as to all state-
ments. They need not be representations, even, if this term
conveys an idea of an affirmation having any technical char-
acter. Statements and declarations is the expression; what
the applicant states, and what the applicant declares. Noth-
ing can be more simple. If he makes any statement in the
application it must be true. If he makes any declaration in
the application it must be true. A faithful performance of
this agreement is made an express condition to the existence
of a liability on the part of the company." The policy, then,.
having been issued upon the express condition that each state-
ment and each declaration shall be found to be true, the only
remaining question is whether this language includes declara-
tions in regard to existing alleged facts, or includes also
declarations in regard to the future existence of facts which
are or are not to take place. I was at first inclined to the
opinion that the adjective "untrue" was inapplicable to ex-
press the violation of a promise or agreement in regard to the
future; that a declaration that a person would not do a
thing could not be said to be untrue although the person did
subsequently do the act which he had declared he would
avoid. A consideration, however, of the stress which is laid
by courts in analagous cases upon language in a policy which
implies that a future act material to the risk is to be done or
omitted, leads me to a different conclusion. In fire policies
the application or survey is made generally a part of the pol-
icy. The answers to questions which indicate or declare that
in future a certain state of things is to take place and exist
in the insured property—as, for example, that after a certain
time the property will not be used at night, or that a chim-
ney will be built, or the location of a stove will be changed—
have frequently been held to be binding upon the assured,
and to be a promissory engagement or warranty that the
named act would happen or continue to exist; so that in *Bil-
borough* v. *Ins. Co.* 5 Duer, 587, the principle is stated as
follows: "Language in a policy which imports that it is in-
tended to do or omit an act which materially affects a risk,
its extent, or nature, is to be treated as involving an engage-

ment to do or omit such act." In this policy such statement and declaration is, in substance, incorporated into and made part of the policy. The language in regard to future pernicious habits is far more than a declaration of intention. It is a positive representation of a future fact, and is not to be regarded as an expression of the expectation or belief of the insured.

I am, therefore, led to the conclusion that the clause in the policy imports an agreement that future pernicious habits shall not be entered into, and that if the insured thereafter practices any pernicious habit that obviously tends to shorten life, the policy will be thereby avoided. The evidence is admitted.